IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:     1:22-cv-1394

THOMAS SAXTON, LORETTA GREEN-SAXTON,

    Plaintiffs.

V.

J.R. FILANCE CONSTRUCTION COMPANY, INC.

    Defendant.

_____

**PLAINTIFFS' COMPLAINT**
_____

    Plaintiffs, by and through their attorneys of record, Doehling Law, P.C., allege as follows:

**PARTIES, JURISDICTION, AND VENUE**

    1.    Plaintiffs Thomas Saxton and Loretta Green-Saxton are residents of the state of Colorado.

    2.    Defendant J.R. Filanc Construction Company, Inc. ("Filanc"), is a California company with a principal place of business in California.

1

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs and this civil lawsuit is between citizens of different states.

4. This Court has personal jurisdiction over Defendant.

5. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## GENERAL ALLEGATIONS

6. Plaintiffs incorporate by reference all allegations in this complaint.

7. In the winter of 2021, the City of Gunnison's wastewater treatment plant was undergoing a modernization and energy efficiency improvement project.

8. Prior to that date, on September 18, 2018, the City of Gunnison contracted with Tetra Tech, Inc. ("Tetra") to provide engineering and design services for the wastewater treatment plant project.

9. The City of Gunnison and Tetra subsequently supplemented their agreement to expand the scope of Tetra's work to include construction phase services.

10. As part of its construction phase services, Tetra agreed to supply an on-site inspector to inspect the construction work on the project to ensure that it complied with the appliable construction documents.

2

11. On April 4, 2019, the City of Gunnison contracted with Filanc to act as the construction manager for the project.

12. As the construction manager, Filanc was responsible for ensuring all areas of the worksite were free from known or foreseeable hazards.

13. There was no contractual relationship between Filanc and Tetra for the wastewater treatment plant project.

14. On January 20, 2021, Tetra employed Thomas Saxton to inspect the work of Filanc to ensure that it complied with the applicable construction documents.

15. On January 20, 2021, Saxton was on the premises of the wastewater treatment plant to inspect construction work that Filanc had previously completed to a part of the plant known as the clarifier.

16. It benefited Filanc to have Saxton on the premises of the wastewater plant to inspect the clarifier because Filanc would get a portion of the contract price for the work it completed on the clarifier if Saxton approved of Filanc's work.

17. Representatives from the City and Filanc were previously notified of the inspection and were present for the January 20, 2021, inspection.

18. To inspect the clarifier, Saxton was required to ascend steps connected to a walkway over the sludge pumping station leading to an exterior door, which was the point of access to the clarifier.

19. The walkway and the metal steps leading to the clarifier are outside.

20. The weather at the wastewater treatment plant on January 19, 2021, was warm enough to melt snow that had previously fallen.

21. The melted snow and ice froze the night of January 19, 2021 and turned into a sheet of black ice on the deck of the sledge pumping station and the steps and walkway to the clarifier.

22. Prior to Saxton's arrival on January 20, 2021, fresh snowfall had occurred and covered the black ice.

23. When Saxton arrived for the pre-planned inspection on January 20, 2021, the snow had not been removed from the areas leading to the sludge pumping station and clarifiers.

24. Saxton was not told of the presence of black ice under the fresh fallen snow.

25. There were no sign notifying Saxton of the presence of black ice under the fresh fallen snow.

26. On January 20, 2021, the ice covered the deck of the sledge pumping station, including the area at the bottom of a set of stairs just outside the access doorway to the clarifier.

27. When Saxton arrived for the pre-planned inspection on January 20, 2021, the ice had not been removed from the walkway leading to the clarifier.

28. Saxton was not aware of the ice because of the snow.

29. On January 20, 2021, ice melt was on the premises of the wastewater treatment and available for use.

30. Before the pre-planned inspection, Filanc took no action to ensure that the walkway leading to the inspection site was free of hazards such as ice and snow.

31. Before the pre-planned inspection, Filan did not inspect the area of the inspection site or the walkway leading to the inspection site to ensure that it was free of hazards such as ice and snow.

32. As the construction manager, Filanc was required by its contract with the City, general industry custom, and applicable Occupational Safety and Health Administration rules to maintain a walkway free of hazards such as ice and snow.

33. After his inspection of the clarifier, Saxton exited the clarifier, crossed the walkway, and descended the steps over the sludge pumping station.

34. As Saxton attempted to descend the steps he slipped on ice, fell backward, and the back of his head struck the metal steps.

35. Due to the injuries he sustained in the fall, Saxton was taken by ambulance to the hospital.

36. Due to the injuries he sustained in the fall, Saxton and Green-Saxton have suffered damages, harms, and losses.

## **LOSS OF CONSORTIUM**
CJI-Civ 6:5, 6:6

37. Plaintiffs incorporate all allegations in this complaint by reference.

38. Thomas Saxton was married to Loretta Green-Saxton on January 20, 2021.

39. As a result of the injuries to Saxton, Green-Saxton had a loss of her rights of consortium.

40. Green-Saxton's loss of consortium resulting from the injuries to Saxton includes non-economic damages in the form of loss of affection, society, companionship, and aid and comfort of Saxton.

41. Green-Saxton's loss of consortium resulting from the injuries to Saxton includes economic damages for the loss of household services Saxton would have performed and any resulting expenses which Green-Saxton has had or which she will have any the future.

**FIRST CLAIM FOR RELIEF**
**Negligence**
**CJI-Civ 9:1**

42. Plaintiffs incorporate by reference all allegations in this complaint.

43. Plaintiffs have injuries, damages, and losses.

44. Defendant was negligent.

45. Defendant's negligence incudes, but is not limited to, its failure to inspect the walkway leading to the clarifier to ensure that it was free of hazards such as ice and snow; and its failure to take reasonable actions to ensure that the walkway leading to the clarifier was free of hazards such as ice and snow.

46. Defendant's negligence was a cause of the Plaintiffs' injuries, damages, and losses.

**SECOND CLAIM FOR RELIEF**
**Premises Liability**
**CJI-Civ 12:2, 12:3**

47. Plaintiffs incorporate by reference all allegations in this complaint.

48. Plaintiffs have injuries, damages, and losses.

49. Defendant was a "landowner" of the property where the incident occurred.

7

50. Defendant was an authorized agent or person in possession of real property and/or a person legally responsible for the condition of real property or for the activities conducted or circumstances existing on real property.

51. Saxton was an "invitee" at the time of the incident because he entered or remained on the land of another to transact business in which the parties are mutually interested or he entered or remained on such land in response to the landowner's express or implied representation that the public is requested, expected, or intended to enter or remain.

52. Alternatively, Saxton was a "licensee" at the time of the incident because he entered or remained on the land of another for his own convenience or to advance his own interests, pursuant to the landowner's permission or consent.

53. Defendant actually knew about a danger on the property or, as a person using reasonable care, should have known about it.

54. Alternatively, Defendant failed to use reasonable care with respect to a danger on the property which it created and actually knew about before Saxton incurred any injuries, or failed to use reasonable care to warn of a danger on the property which it did not create but which it actually knew about and the danger was one not ordinarily present on the property of the type involved in this case.

55. The danger on the property was the black ice that was allowed to accumulate on the walkway and steps leading to the clarifier.

56. Defendant failed to use reasonable care to protect against the danger on the property.

57. Defendant's failure was a cause of the Plaintiffs' injuries, damages, and losses.

## DAMAGES
CJI-Civ 6:1, 6:6

58. Plaintiffs incorporate by reference all allegations in this complaint.

59. As a result of incident, Saxton suffered past and future noneconomic losses or injuries, including: physical and mental pain and suffering, inconvenience, emotional stress, and impairment of the quality of life.

60. As a result of the incident, Saxton suffered past and future economic damages, including: loss of earnings or damage to his ability to earn money in the future, and medical, hospital, and other expenses.

61. As a result of the incident, Green-Saxton suffered non-economic damages in the form of the loss of affection, society, companionship, and aid and comfort of Green-Saxton.

62. As a result of the incident, Green-Saxton suffered economic damages due to the loss the loss of household services Saxton would have performed and any resulting expenses which Green-Saxton has had or which she will have any the future.

**WHEREFORE**, Plaintiffs respectfully request:

A. Judgment to be entered against the Defendant in an amount to be proven at trial for all actual damages caused to Plaintiffs by the incident;

B. Pre-Judgment and post-judgment interest;

C. Costs of litigation, including expert witness fees;

D. Reasonable attorneys' fees; and,

E. Such other and further relief as the Court deems just and proper.

RESPECTFULLY submitted this 2nd day of June, 2022.

**DOEHLING LAW, P.C.**

/s/ *Keller A. Caubarreaux*
Keller A. Caubarreaux    No 40612
Joseph H. Azbell         No. 44586
Attorneys for Plaintiffs